﻿Citation Nr: AXXXXXXXX
Decision Date: 05/10/19 Archive Date: 05/10/19

DOCKET NO. 181221-1765
DATE: May 10, 2019

ORDER

Entitlement to service connection for left hip, degenerative joint disease and arthritis is granted.

Entitlement to service connection for right hip, degenerative joint disease and arthritis is granted.

Entitlement to service connection for low back condition (previously claimed as back pain) is granted.

Entitlement to service connection for rash is denied.

Entitlement to an award of total disability based on individual unemployability (TDIU) at an earlier date is granted and established from May 17, 2013. 

The appeal for entitlement to basic eligibility to Dependents’ Educational Assistance at an earlier effective date is granted with an establishment date of May 17, 2013. 

Entitlement to an award of service connection at a date prior to April 27, 2016, for diabetes mellitus type II (DMII), is denied.

Entitlement to an award of service connection at a date prior to July 31, 2009, for hypertension is denied. 

Entitlement to a disability rating for diabetes mellitus in excess of 10 percent disabling is denied.

Entitlement to a compensable disability rating for hemorrhoids is denied.

Entitlement to a disability rating for hypertension in excess of 10 percent is denied.

Entitlement to a disability rating for major depressive disorder in excess of 50 percent is denied.

Entitlement to a disability rating for ulcerative colitis of 60 percent disabling, but no higher, is granted prior to May 23, 2017; and in excess of 60 percent effective May 23, 2017 is denied. 

FINDINGS OF FACT

1. Resolving reasonable doubt in favor of the Veteran, the Veteran’s right and left hip degenerative arthritis, and lumbar spine degenerative arthritis, are secondary to his medical treatment for service-connected colitis. 

2. The Veteran does not have a currently diagnosed skin condition related to a claim for rash as secondary to colitis.

3. The Veteran was unemployable due to service-connected colitis and depressive disorder as of May 17, 2013. 

4. The Veteran submitted a formal TDIU claim in April 2016, but unemployability was raised by the record as part of the increased rating claim for colitis in 2009. 

5. Basic eligibility for Dependents’ Educational Assistance benefits began May 17, 2013. 

6. The Veteran submitted a claim on a form recognized by the Secretary of VA for entitlement to service connection for diabetes mellitus type II on April 27, 2016. 

7. The Veteran submitted an informal claim for entitlement to service connection for hypertension on July 31, 2009. 

8. The Veteran’s diabetes mellitus was manifested by a need for restricted diet, but not by a need for insulin or oral hypoglycemic medication. 

9. The medical evidence of record shows that the Veteran’s hemorrhoids disability is mild or moderate and does not manifest in large or thrombotic, irreducible hemorrhoids with excessive redundant tissue evidencing frequent occurrences. 

10. Throughout the appeal period, the Veteran’s hypertensive disability has more closely approximated that of an individual with a history of diastolic blood pressure predominantly 100 or more that requires continuous medication for control; his systolic and diastolic readings are not shown to be predominantly 200 or more, or 110 or more, respectively. 

11. The Veteran’s major depressive disorder is manifested in symptoms such as disturbances of motivation and mood and difficulty in establishing and maintaining effective work and social relationships that result in occupational and social impairment with reduced reliability and productivity but not deficiencies in most areas.

12. Throughout the appeal period, the Veteran had a diagnosis of ulcerative colitis, which has been manifested by severe symptoms, with numerous attacks a year and malnutrition, and health only fair during remissions. 

CONCLUSIONS OF LAW

1. The criteria for readjudicating the claim for service connection for lumbar spine degenerative disease and arthritis have been met. Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55, § 5108, 131 Stat. 1105 (2017). 

2. The criteria for entitlement to service connection for left hip and right hip degenerative joint disease and arthritis, and lumbar spine degenerative disc disease have been met. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303, 3.310. 

3. The criteria for entitlement to service connection for rash have not been met. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303, 3.310. 

4. The criteria for TDIU are met from May 17, 2013. 38 U.S.C.§§ 1155, 5107; 38 C.F.R. § 4.1, 4.3, 4.10, 4.16(a). 

5. The criteria for an effective date earlier of May 17, 2013, for basic eligibility for Chapter 35 Dependents’ Educational Assistance benefits have been met. 38 U.S.C. § 5110; 38 C.F.R. §§ 3.310, 3.155, 3.400. 

6. The criteria for entitlement to an effective date prior to April 27, 2016, for the award of service connection for diabetes mellitus, type II, have not been met. 38 U.S.C. § 1155, 5107; 38 C.F.R. § 3.1 (p), 3.150, 3.155, 3.160(a), 3.400. 

7. The criteria for an effective date prior to July 31, 2009, for the grant of service connection for status hypertension are not met. 38 U.S.C. § 1155, 5107; 38 C.F.R. § 3.400. 

8. The criteria for evaluation of diabetes mellitus in excess of 10 percent disabling have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 4.1-4.14, 4.21, 4.119, Diagnostic Code 7913. 

9. The criteria for a compensable rating for hemorrhoids have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.2, 4.7, 4.114, Diagnostic Code (DC) 7336. 

10. The criteria for a disability rating in excess of 10 percent evaluation for hypertension, have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.104, DC 7101. 

11. The criteria for evaluation of major depressive disorder in excess of 50 percent disability rating have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.130, DC 9434. 

12. The criteria for a disability rating of 60 percent, but no higher, for ulcerative colitis have been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107; 38 C.F.R. § 4.130, DC 7323. 

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

On August 23, 2017, the President signed into law the Veterans Appeals

Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as

amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as

the Appeals Modernization Act (AMA). This law creates a new framework for

Veterans dissatisfied with VA’s decision on their claim to seek review. The Board

is honoring the Veteran’s choice to participate in VA’s test program, RAMP, the

Rapid Appeals Modernization Program. 

The Veteran had active service from May 1971 to March 1992. The Veteran selected the Higher-Level Review lane when he submitted the RAMP election

form. Accordingly, the December 2018 RAMP rating decision considered the evidence of record as of the date VA received the RAMP election form, June 4, 2018. The Veteran timely appealed this RAMP rating decision to the Board and requested direct review of the evidence considered by the Agency of Original

Jurisdiction (AOJ). 

The new and material evidence issue regarding lumbar spine DDD has been

recharacterized to reflect the new evidentiary standard under the AMA. Pub. L.

No. 115-55, § 5108, 131 Stat. 1105, 1109. 

In the December 2018 RAMP decision, the AOJ analyzed the evidence submitted for the Veteran’s claim for service connection for lumbar spine disease. However, the RO analyzed the evidence using the previous standard of “new and material” evidence, rather than the less stringent required AMA standard of “new and relevant” evidence. “Relevant evidence” is evidence that tends to prove or disprove a matter in issue. AMA, Pub. L. No. 115-55, § 101(35), 131 Stat. 1105, 1105. The RO denied service connection in the December 2018 RAMP decision for lumbar spine disease previously considered in the final May 2010 rating decision. It is unclear to the Board whether the RO reopened the claim for service connection for lumbar spine in the December 2018 RAMP decision; if so, the Board would be bound by that favorable finding. AMA, Pub. L. No. 115-55, § 5104A, 131 Stat. 1105, 1106-07. It also appears that the RO did not consider all evidence in the Veteran’s claims file pertaining to the lumbar spine claim in its narrative decision. Nonetheless, the Board finds no prejudice here, as the Board finds that new and relevant evidence was submitted to warrant readjudicating the claim for service connection for lumbar spine disease, specifically, the Veteran submitted an October 2017 private medical opinion linking the development of lumbar spine DDD with the Veteran’s long-term use of steroids prescribed for service-connected colitis, and the Board finds that service connection for lumbar spine disease is warranted as explained below. 

1. Entitlement to service connection for left hip, degenerative joint disease and arthritis

2. Entitlement to service connection for right hip, degenerative joint disease and arthritis

3. Entitlement to service connection for lumbar spine, degenerative disc disease and arthritis

The Veteran contends that he developed degenerative joint disease and arthritis in his bilateral hips, and degenerative disc disease and arthritis in the lumbar spine as a result of steroidal medication prescribed over several years for service-connected colitis. After a thorough review of the evidence, the Board finds that the evidence is at least in equipoise as to these disabilities and therefore service connection is warranted. 

Entitlement to service connection requires evidence of three elements: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship or nexus between the current disability and the disease or injury incurred or aggravated during active service. Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004). 

The AOJ has found that the Veteran has a current diagnosis of degenerative disc disease in the lumbar spine and degenerative joint disease in both hips. 

The question in this case is whether a relationship or nexus exists between the Veteran’s active service or a service-connected disability and the Veteran’s bilateral degenerative joint disease in the hips and degenerative disc disease in the lumbar spine. 

The Board finds that a causal relationship or nexus exists between the Veteran’s bilateral degenerative joint disease in the hips, the degenerative disc disease in the lumbar spine, and the Veteran’s prescribed steroidal treatment for service-connected colitis. There is evidence both for and against the finding of this nexus, however, in the event that equipoise for and against a claim exists, the finding is in favor of the Veteran’s claim. 38 C.F.R. § 3.102. 

The Veteran was afforded a VA examination for the hips in August 2016. The examiner opined that the Veteran’s bilateral degenerative joint disease in the hips was not at least as likely as not related to his treatment for service-connected colitis because the Veteran had undergone a bone scan in 2016 of the hips and spine showing normal bone density and rationalized that the hips condition was a part of the aging process. 

The Veteran submitted a private medical opinion dated July 2015 that stated that the Veteran’s “severe arthritis” of the left hip and back that was more likely than not a result of the long-term steroidal treatment for service-connected colitis. This opinion was not discussed in the September 2016 rating decision. 

The Veteran submitted another private medical opinion dated October 2017 in which the physician stated that the Veteran’s bilateral hip pain and back pain related to arthritis are “classic” manifestations related to colitis and that these were more likely than not related to the service-connected colitis. 

The December 2018 RAMP decision included these private medical opinions, the Veteran’s submitted medical research articles, and the Veteran’s statements regarding his treatment for colitis pertaining to his hips and back in the evidence list, however, it does not appear that these items were considered in the narrative decision. Regardless, the Board finds that the evidence is at least in equipoise as to whether the Veteran’s arthritis categorized as degenerative joint disease in the bilateral hips, and degenerative disc disease in the lumbar spine are related to the Veteran’s prescribed steroidal medication over the previous years for service-connected colitis. Accordingly, the Board finds that entitlement to service connection for degenerative joint disease of the bilateral hips and degenerative disc disease of the lumbar spine is warranted and the appeal to these issues is granted. 

4. Entitlement to service connection for rash

The Veteran claims that he has a rash secondary to his service-connected colitis. After a thorough review of the evidence, the Board finds that entitlement to service connection for rash is not warranted. 

The Veteran was afforded a VA examination in January 2016 for skin disease. The Veteran denied anal rash. The Veteran reported rash on the side of his nose. The Veteran stated that he was prescribed a topical medication for it. The examiner noted a plaque on the nose and a faint lesion on the nose without diagnosis. The examiner stated that the Veteran does not have a current diagnosis of rash or skin disease. The Veteran’s CAPRI records note the Veteran complained of rash on his nose around 2015 that was referred as needing biopsy. 

In the July 2015 Board hearing, the Veteran discussed how he had a rash from wiping so often due to colitis. However, he denied having anal rash at the January 2016 VA examination. Additionally, there is not a separately diagnosed skin disorder that is not a symptom related to already service-connected colitis such as redness or swelling related to colitis. 

Lacking a current diagnosis, the cornerstone element of service connection has not been established, and service connection is not warranted. See Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). Accordingly, the appeal for entitlement to service connection for rash is denied. 

TDIU

5. Entitlement to individual unemployability at an effective date prior to May 23, 2017

The Veteran was awarded total disability based on individual unemployability (TDIU) with an effective date of May 23, 2017 and he contends that he should be entitled from an earlier date since he stopped working due to service-connected disabilities in May 2013. After a thorough review of the evidence, the Board finds that the Veteran met the criteria for TDIU from May 17, 2013. 

Total disability ratings for compensation may be assigned where the Schedular rating is less than total, when the disabled person is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities. Marginal employment is not considered substantially gainful employment. 38 C.F.R. §§ 3.340, 4.16(a). 

Substantially gainful employment means, essentially, that the work provides income above the poverty level established by the United States Department of Commerce, without benefit of protected family employment or a sheltered workshop. 38 C.F.R. § 4.16(a). Factors to be considered in determining entitlement to TDIU include but are not limited to employment history, educational achievement, and vocational attainment. Age is not a factor. 38 C.F.R. § 4.16(b). 

Basic eligibility is established where there is one disability rated 60 percent or more, or multiple disabilities rated at least a combined 70 percent, with one disability rated at least 40 percent. 38 C.F.R. § 4.16(a). For the purpose of one 60 percent disability, disabilities resulting from common etiology or a single accident may be considered as one disability. 

The Veteran is rated (prior to the decisions herein) for ulcerative colitis at 30 percent from March 3, 1992 and 60 percent from May 23, 2017; major depressive disorder at 50 percent from January 28, 2009; Right thumb arthritis at 10 percent from July 31, 2009; Hypertension from July 31, 2009; diabetes mellitus at 10 percent from April 27, 2016; and hemorrhoids and left chin excision of lesion at a noncompensable rating. The Veteran has a combined evaluation of 70 percent from January 28, 2009; 80 percent from April 27, 2016, and 90 percent from May 23, 2017. Therefore, the Veteran meets the rating eligibility for consideration for TDIU. 

The Veteran submitted a formal claim for TDIU in April 2016. 

In a written statement in June 2016, the Veteran described the impact of his colitis on his life as requiring regular trips to the bathroom, always having to know where a bathroom is when he leaves the house and planning his day around that; and carrying clean clothes with him at all times. He wrote that he had to stop working because he was “getting very impatient with people I would get in arguments with coworkers and my boss. I was always worried about having accidents at work and therefore extremely anxious.” 

A claim for TDIU is raised during a claim for an increased rating if there is an indication of an impact on employment. See Rice v. Shinseki, 22 Vet. App. 447 (2009) (A total rating for compensation based on individual unemployability (TDIU) is an element of all appeals of an initial rating.)

The Veteran was afforded a VA examination for colitis and hemorrhoids in July 2010. The examiner noted that the Veteran’s colitis affected his work in that he had taken a lot of time off work because of colitis flare ups and related treatment. Therefore, the issue of TDIU was raised in the increased rating claim for colitis made in 2009. See Rice supra. The Veteran reported having to take a week off of work in December 2009 and that the associated steroid treatment also causes weight gain and affects his mood and depressive symptoms. The Veteran reported daily cramping and pain in various locations in his body. When he has the flares, they include diarrhea and bleeding and he must stay home from work. The Veteran has been to the emergency room twice this year but not hospitalized.

In November 2011, the Veteran was admitted to the hospital for a 4 day stay due to colitis. The Veteran reported two weeks of uncontrolled bowel movements that were bloody. 

At a February 2013 VA appointment, the Veteran reported five to six bowel movements daily with “good and bad days” and daily pain in the abdomen.

In May 2016 the RO received employment history stating that the Veteran had last worked on May 16, 2013 and had stopped working because he “resigned.” 

At the August 2016 VA examination for colitis, the Veteran told the examiner that he had left work in 2013 because of the colitis and depression and that the steroidal medication had been affecting him physically and emotionally. 

In the Veteran’s independent medical evaluation dated September 2017 and related follow-up, the evaluator opined that the Veteran’s colitis and depression caused him to be unemployable. 

In the Veteran’s October 2017 VA treatment records, he reported that he does not go more than one month without colitis problems, although the doctor reported his colitis was in remission and he suspected irritable bowel syndrome as an additional factor in his intestinal symptoms. 

The Veteran’s records document that he was employed gainfully until May 16, 2013, and the evidence of record supports that his service-connected colitis and depression were the main contributors to his inability to continue working. Since that time the Veteran has continued to have health problems that supports a determination that he is unable to obtain and maintain substantially gainful employment due to his service-connected colitis and depression. Therefore, resolving all reasonable doubt in the Veteran’s favor, entitlement to a TDIU is granted from May 17, 2013, pursuant to 38 C.F.R. § 4.16(a). 38 U.S.C.§ 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 

6. Basic eligibility to Dependents’ Educational Assistance 

Regarding the Veteran’s claim of entitlement to an earlier effective date for Dependents’ Educational Assistance benefits pursuant to 38 U.S.C. Chapter 35, entitlement to an effective date of May 17, 2013 is warranted. 

Survivors’ and Dependents’ Educational Assistance under Chapter 35, Title 38, of the United States Code, is a program of education or special restorative training that may be authorized for an eligible person, such as a surviving spouse, if the applicable criteria are met. See 38 U.S.C. §§ 3500, 3501; 38 38 C.F.R. §§ 21.3020, 21.3021. Basic eligibility for certification of Dependents’ Educational Assistance exists if the veteran was discharged from service under conditions other than dishonorable, or died in service, and either (1) has a permanent total service-connected disability, or (2) a permanent total service-connected disability was in existence at the date of the veteran’s death, or (3) died as a result of a service-connected disability, or, if a service member (4) is on active duty as a member of the Armed Forces and, for a period of more than 90 days, has been listed by VA concerned as missing in action, captured in line of duty by a hostile force, or forcibly detained or interned in the line of duty by a foreign government or power. 38 C.F.R. § 3.807. 

The Veteran was awarded eligibility to Dependents’ Educational Assistance effective May 15, 2017, based upon the finding that the evidence showed permanent and total disability and an award of TDIU. Since the Veteran is granted an earlier effective date for TDIU herein, the earliest date at which the Veteran could establish eligibility for Chapter 35 benefits at this point is May 17, 2013, as the evidence does not support that there was such severity prior to that date, nor does the record show that receipt of claim was received prior to that date. Accordingly, entitlement to an earlier effective date for Dependents’ Educational Assistance benefits is granted from May 17, 2013. 

 

Earlier Effective Date

Generally, the effective date of an evaluation and award of compensation for an increased rating claim is the date of receipt of the claim or the date entitlement arose, whichever is the later. 38 U.S.C. § 5110(a); 38 C.F.R. § 3.400(o)(1). Claim “means a written communication requesting a determination of entitlement or evidencing a belief in entitlement, to a specific benefit under the laws administered by the Department of Veterans Affairs. Submitted on an application form prescribed by the Secretary.” 38 C.F.R. § 3.1(p). 

7. Entitlement to an earlier effective date, prior to April 27, 2016, for award of service connection for diabetes mellitus, type II 

The Veteran contends that he is entitled to an effective date for grant of entitlement to service connection for diabetes mellitus type II prior to April 27, 2016. After a thorough review of the evidence, the Board finds that an effective date prior to April 27, 2016 for the award of entitlement to service connection for DMII is not warranted. 

Generally, the effective date of an award of pension or compensation will be the day following separation from active service or the date entitlement arose, if the claim is received within one year after discharge from service. Otherwise, for an award based on an original claim, claim reopened after a final disallowance, or claim for an increased rating, the effective date is the date of receipt of the claim or the date entitlement arose, whichever is the later. 38 U.S.C. § 5110(a); 38 C.F.R. § 3.400. 

A specific claim in the form prescribed by the Secretary must be filed in order for benefits to be paid or furnished to any individual under the laws administered by the Secretary. 38 U.S.C. § 5101. 

Effective March 24, 2015, a change in the regulation requires claims be filed on standard forms, eliminating constructive receipt of claims and informal claims. See 38 C.F.R. §§ 3.1 (p), 3.150, 3.155, 3.160(a). Instead of informal claims, the new regulation provides that a claimant may request an application for benefits, upon receipt of which, the Secretary shall notify the claimant of the information necessary to complete the application form or form prescribed by the Secretary. 38 C.F.R. § 3.155(a). 

The regulation also allows a claimant to submit an intent to file a claim, and VA may recognize the receipt date of the intent to file a claim as the date of claim so long as VA receives the successfully completed claim form within a year. 38 C.F.R. § 3.155(b). There are three ways in which a claimant may submit an intent to file a claim: (i) saved electronic application – when an application otherwise meeting the requirements of paragraph (b) is electronically initiated and saved in a claims – submission tool with a VA web-based electronic claims application system, (ii) written intent, signed and dated on the intent to file a claim form prescribed by the Secretary, and (iii) oral intent communicated to designated VA personnel, recorded in writing, and documented in the claimant's records. Id. 

In the Federal Register, lawmakers explained the change: “those claimants who are familiar with VA’s claims process may recognize the operation of the intent to file process as functioning similar to the current informal claim process.” However, “[t]he difference is that the intent to file a claim form serves as the effective date placeholder like the informal claim itself but must be submitted in specified standard formats and will only trigger VA’s duty to furnish the claimant the appropriate form.” This rule will not disturb the amount of monies paid except “where a claimant who is not familiar with the intent to file a claim process submits an informal claim which VA will deem as a request for an application for benefits, resulting in the claimant submitting an intent to file a claim form or complete claim at a later date.” Standard Claims and Appeals Forms, 79 Fed. Reg. 57660, 57661 (Sept. 25, 2014). 

The Board has reviewed the record and the associated law and finds that the criteria for an effective date prior to April 27, 2016 have not been met. See 38 C.F.R. §§ 3.1(p), 3.150, 3.155, 3.400. 

On September 29, 2015 and October 22, 2015, the Veteran submitted forms VA 21-4138 on which he requested to open a claim for DMII secondary to service-connected colitis. The Board here notes that these dates are after March 24, 2015, the effective date of the regulation requiring submission of a claim on a prescribed claim form, or an intent to file a claim, also submitted on the appropriate form. 38 C.F.R. §§ 3.1 (p), 3.150, 3.155, 3.160(a). 

On October 8, 2015, in accordance with regulation, VA mailed the Veteran a notice of required claim form and instructions on how to file a claim on the standard form. 

On April 27, 2016, the Veteran submitted a VA Form 21-526b requesting to open a claim for entitlement to service connection for DMII. 

In a September 2016 rating decision, the RO granted entitlement to service connection for DMII with an effective date of April 27, 2016. 

The law no longer allows for informal claims. Instead, as explained above, a claimant may file an intent to file a claim form that can act as a placeholder for the effective date of a completed claim form received within a year. See 38 C.F.R. § 3.155(b). In order to be treated as a written intent to file a claim, the correspondence must be made on the VA intent to file a claim form as prescribed by the Secretary. 38 C.F.R. § 3.155(b)(1)(ii). The Veteran’s September and October 2015 correspondence was filed on VA Statement in Support of Claim Form, not the prescribed Intent to File a Claim Form that is required. Thus, the September and October 2015 correspondence acted only as a request for an application for benefits; it could not be an actual placeholder for the effective date of his claim. See 38 C.F.R. § 3.155(a), (b). 

The evidence of record does not show a claim, or an intent to file a claim, for diabetes mellitus type II was filed prior to April 27, 2016. Accordingly, the appeal for an effective date prior to April 27, 2016 for the grant of entitlement to service connection for diabetes mellitus type II is denied. 

8. Entitlement to an earlier effective date, prior to July 31, 2009, for award of service connection for hypertension 

The Veteran contends that he is entitled to an effective date for grant of entitlement to service connection for hypertension prior to July 31, 2009. After a thorough review of the evidence, the Board finds that an effective date prior to July 31, 2009 for the award of entitlement to service connection for hypertension is not warranted. See 38 C.F.R. §§ 3.1(p), 3.150, 3.155, 3.400. 

The Veteran submitted an informal claim for entitlement to service connection for hypertension on July 31, 2009 on a Form 21-4138, statement in support of claim. 

After various denials and rating decisions, and a remand by the Board in 2015, the RO granted entitlement to service connection for hypertension in a December 2017 rating decision with an effective date of July 31, 2009. 

The evidence of record does not show that the Veteran submitted a claim or informal claim prior to July 31, 2009 for service connection for hypertension. 

As discussed in the diabetes section above, the regulation regarding informal claims was changed on March 24, 2015 to require a claim be submitted on a specified claim form, or as an intent to file on a specified form, followed up by a formal claim. Regarding the hypertension claim, the Veteran submitted an informal claim in July 2009, prior to the change in the regulation in 2015, therefore an informal claim was accepted as the placeholder for the eventual grant of service connection for hypertension with an effective date of July 31, 2009. 38 C.F.R. § 3.155(a), (b). 

The evidence of record does not show a claim, or an intent to file a claim, for hypertension was filed prior to July 31, 2009. Accordingly, the appeal for an effective date prior to July 31, 2009 for the grant of entitlement to service connection for hypertension is denied. 

 

Increased Rating

Disability ratings are determined by applying the criteria set forth in VA’s Schedule for Rating Disabilities (Rating Schedule), which is based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. The basis of disability evaluations is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life including employment. 38 C.F.R. § 4.10.

If there is a question as to which evaluation to apply to the Veteran’s disability, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. When reasonable doubt arises as to the degree of disability, such doubt will be resolved in the Veteran’s favor. 38 C.F.R. § 4.3. 

Pertinent regulations do not require that all cases show all findings specified by the Rating Schedule, but that findings are sufficiently characteristic to identify the disease and the resulting disability and coordination of rating with impairment of function. 38 C.F.R. § 4.21. Therefore, the Board has considered the potential application of various other provisions of the regulations governing VA benefits, whether or not they were raised by the Veteran, as well as the entire history of his disability in reaching its decision. Schafrath v. Derwinski, 1 Vet. App. 589, 595 (1991). 

In considering the severity of a disability, it is essential to trace the medical history of the veteran. 38 C.F.R. §§ 4.1, 4.2, 4.41. Consideration of the whole-recorded history is necessary so that a rating may accurately reflect the elements of any disability present. 38 C.F.R. § 4.2; Peyton v. Derwinski, 1 Vet. App. 282 (1991). Where entitlement to compensation has already been established and an increase in the disability rating is at issue, the present level of disability is of primary concern. Although a rating specialist is directed to review the recorded history of a disability in order to make a more accurate evaluation, see 38 C.F.R. § 4.2, the regulations do not give past medical reports precedence over current findings. Francisco v. Brown, 7 Vet. App. 55 (1994). 

“The relevant temporal focus for adjudicating an increased-rating claim is on the evidence concerning the state of the disability from the time period one year before the claim was filed until VA makes a final decision on the claim.” Hart v. Mansfield, 21 Vet. App. 505, 509 (2007). The relevant time period for consideration in a claim for an increased initial disability rating is the period beginning on the date that the claim for service connection was filed. Moore v. Nicholson, 21 Vet. App. 211, 216-17 (2007).

The Board must also assess the competence and credibility of lay statements and testimony. Barr v. Nicholson, 21 Vet. App. 303, 308 (2007). In increased rating claims, a Veteran’s lay statements alone, absent a negative credibility determination, may constitute competent evidence of worsening, at least with respect to observable symptoms. See Vazquez-Flores v. Shinseki, 24 Vet. App. 94, 102 (2010), rev’d on other grounds by Vazquez-Flores v. Shinseki, 580 F.3d 1270, 1277 (Fed. Cir. 2009). 

In general, all disabilities, including those arising from a single disease entity, are rated separately, and all disability ratings are then combined in accordance with 38 C.F.R. § 4.25. However, pyramiding, or evaluating the same manifestation of a disability under different diagnostic codes, is to be avoided. See 38 C.F.R. § 4.14. Thus, separate ratings under different diagnostic codes are only permitted if, for example, those separate ratings are assigned based on manifestations of the Veteran’s disability that are separate and apart from manifestations for which the Veteran has already been rated. Esteban v. Brown, 6 Vet. App. 259, 261 (1994). 

In determining the propriety of the initial rating assigned after a grant of service connection, the evidence since the effective date of the grant of service connection must be evaluated and staged ratings must be considered. Fenderson v. West, 12 Vet. App. 119, 126-127 (1999). Staged ratings are appropriate when the evidence establishes that the claimed disability manifested symptoms that would warrant different ratings for distinct time periods during the course of the appeal. 

9. Evaluation of diabetes mellitus in excess of 10 percent disabling 

The Veteran contends that the initial assignment of a 10 percent rating for diabetes mellitus does not reflect the severity of the disability. After a thorough review of the evidence, the Board finds that a rating in excess of 10 percent is not warranted. 

The Veteran’s diabetes mellitus type II disability is currently rated under 38 C.F.R. § 4.119, Diagnostic Code 7913, with a 10 percent rating. 

For diabetes manageable by a restricted diet only, a 10 percent rating is warranted. 38 C.F.R. § 4.119, Diagnostic Code 7913. For diabetes requiring insulin and restricted diet, or requiring an oral hypoglycemic agent and a restricted diet, a 20 percent rating is warranted. Id. For diabetes requiring insulin, a restricted diet, and regulation of activities, a 40 percent rating is warranted. Id. Any rating higher than 40 percent requires other factors in addition to those three. Id. Regulation of activities is described as “avoidance of strenuous occupational and recreational activities.” Id. Medical evidence is required to show that occupational and recreational activities have been restricted. Camacho v. Nicholson, 21 Vet. App. 360, 363-64 (2007). 

The Veteran was afforded a VA examination for diabetes in August 2016. The examiner noted that the Veteran’s DMII was managed by restricted diet. The Veteran did not require regulation of activities as part of medical management of diabetes mellitus. The Veteran visited the diabetic care provider less than two times per month for episodes of ketoacidosis or hypoglycemia and had no hospitalizations due to these conditions. There was no unintentional weight loss due to DMII. The Veteran reported the DMII began around 2009 secondary to the treatment for colitis. There were no signs of malaise and the Veteran was well-nourished. 

The preponderance of the evidence shows that the Veteran does not meet the schedular criteria for a rating in excess of 10 percent for diabetes mellitus. The preponderance of the evidence does not show that the Veteran’s diabetes required the use of insulin or an oral hypoglycemic agent. The evidence of record documents that the Veteran’s diabetes mellitus type II is managed by restricted diet. Accordingly, the appeal for a disability rating in excess of 10 percent for diabetes mellitus type II is denied. 

10. Evaluation of hemorrhoids at a compensable level

The Veteran contends that his service-connected hemorrhoid disability is worse than contemplated by the current noncompensable rating. After a thorough review of the evidence, the Board finds that a compensable rating is not warranted. 

The Veteran is service-connected for hemorrhoids since March 1992. The Veteran submitted an increased rating claim for hemorrhoids in July 2009. 

The Veteran’s hemorrhoids are currently assigned a noncompensable rating under Diagnostic Code 7336, governing external or internal hemorrhoids. 38 C.F.R. § 4.114, Diagnostic Code 7336. A noncompensable rating is warranted for mild or moderate internal or external hemorrhoids. A 10 percent rating is warranted for internal or external hemorrhoids that are large or thrombotic, irreducible, with excessive redundant tissue and evidencing frequent recurrences. A 20 percent rating is assigned for hemorrhoids with persistent bleeding and with secondary anemia, or with fissures. 

The Veteran was afforded a VA examination in September 2009. The examiner noted that the Veteran was not anemic, and the hemorrhoids were mild. 

The Veteran was afforded a VA examination in July 2010. The Veteran was not anemic. The Veteran’s hemorrhoids showed no thrombosis or fissures and the Veteran used topical medications to treat the hemorrhoids. There was no bleeding at the time of examination, although the Veteran reported that sometimes the hemorrhoids bleed. 

At the July 2015 Board hearing, the Veteran reported that he has hemorrhoids appear multiple times per day. The Veteran reported that he used a topical ointment to treat the hemorrhoids and also took hot baths to relieve them. The Veteran reported they were painful and sometimes there was bleeding. 

The Veteran was afforded a VA examination in May 2017 for hemorrhoids. The examiner categorized the Veteran’s hemorrhoids as mild or moderate. The Veteran reported pain associated with the hemorrhoids and used topical cream to treat them. The Veteran did not test as anemic. 

The Board notes that the Veteran also demonstrates symptoms of bloody stools which are part of the colitis disability and separate from any report of bleeding hemorrhoids. 

Upon review of the record, the Board finds that the Veteran’s hemorrhoid disability manifests in a mild or moderate condition, most nearly approximating the noncompensable disability rating. The evidence of record does not support that the Veteran experiences large or thrombotic, irreducible hemorrhoids with excessive redundant tissue evidencing frequent occurrences that would be required for the higher 10 percent disability rating, and although the Veteran reports bleeding sometimes, the Veteran is not anemic and does not have fissures that would be required for the 20 percent rating. Accordingly, the appeal for a compensable disability rating for the Veteran’s hemorrhoid disability is denied. 

11. Evaluation of hypertension, in excess of 10 percent disability rating

The Veteran contends that his hypertension is worse than the 10 percent disability rating currently assigned. After a thorough review of the evidence, the Board finds that a disability rating in excess of 10 percent for hypertension is not warranted. 

The Veteran has been assigned a 10 percent evaluation for hypertension from July 31, 2009, under Diagnostic Code 7101. 38 C.F.R. § 4.104. Upon review of the record, the Board finds that a rating in excess of 10 percent is not warranted. 

Under Diagnostic Code 7101, a rating of 10 percent requires diastolic blood pressure predominantly 100 or more, or systolic blood pressure predominantly 160 or more. It is also the minimum evaluation for an individual with a history of diastolic blood pressure predominantly 100 or more who requires continuous medication for control. A rating of 20 percent requires diastolic blood pressure predominantly 110 or more, or systolic blood pressure predominantly 200 or more. A rating of 40 percent requires diastolic pressure predominantly 120 or more. A rating of 60 percent requires diastolic blood pressure predominantly 130 or more. 

A July 2011 medical treatment record shows the Veteran was prescribed medication for high blood pressure. 

At a September 6, 2014 VA medical appointment, the doctor stated that the Veteran may need a lower dose of hypertension medication as his blood pressure was under 100 and “mildly tachy.” The blood pressure recorded at the September 4, 2014 visit was 96/62. 

At a November 2014 medical appointment, the Veteran reported fluctuating blood pressure from 103/71 to 96/70. 

At a December 11, 2014 VA medical appointment, the Veteran reported he had been told by his primary medical doctor not to take his blood pressure medications, his blood pressure was recorded to be 144/111, a second reading was 155/100. A 3rd blood pressure reading at that appointment was 160/101. 

A July 21, 2015 VA medical record shows the Veteran’s blood pressure was 123/86. 

At the January 2016 VA medical examination, the Veteran’s blood pressure readings were 163/113; 150/100; and 145/95. 

An August 2016 medical treatment record documents blood pressure readings of 130/90; 130/86; and 128/90. 

The preponderance of the evidence is against the assignment of an evaluation greater than 10 percent for hypertension. None of the evidence demonstrates that his diastolic blood pressure is predominantly 110 or more or that his systolic blood pressure is predominantly 200 or more. Although there have been sporadic readings of diastolic over 110, the Veteran’s disability picture overall more closely approximates the criteria for a 10 percent disability rating, but no higher. Accordingly, the appeal for a disability rating in excess of 10 percent for hypertension is denied. 

12. Evaluation of major depressive disorder in excess of 50 percent disability rating

The Veteran contends that his major depressive disorder is more severe than currently contemplated by the assigned 50 percent disability rating. After a thorough review of the evidence, the Board finds that a disability rating in excess of 50 percent for depressive disorder is not warranted. 

Initially, the Board notes that the Veteran’s claim for an increased rating is not properly on appeal to the Board, but was constructively accepted by the RO and included in the September 2016 rating decision that was among the issues included the June 2018 RAMP opt-in form. The issue of increased rating for depressive disorder was then included in the December 2018 RAMP decision and properly appealed in the direct review process to the Board. The RO granted entitlement to service connection for depressive disorder at a 50 percent evaluation in a May 2009 rating decision. The Veteran then initially submitted a claim form for increased rating for depressive disorder in September 2009 before submitting a notice of disagreement with the May 2009 rating decision assignment of 50 percent for depressive disorder in February 2010. The RO issued a statement of the case in July 2010 continuing the 50 percent disability rating. The Veteran perfected an appeal with a VA Form 9 in August 2010. As the Veteran had several issues pending adjudication, the RO contacted the Veteran’s POA and requested clarification of which issues the Veteran wanted to appeal. In an April 2012 letter, the Veteran’s POA stated that a variety of issues were being appealed and did not include the issue of increased rating for depressive disorder among those issues, therefore the RO considered it withdrawn, which was stated in an April 24, 2012 memorandum. No further action was taken on this issue by the RO. 

In June 2016, the Veteran, through his new POA, submitted a statement of claim Form 21-4138 in which he discussed his depressive disorder. The RO did not send the Veteran a letter and request to submit a formal claim. The RO requested a VA psychiatric examination for the Veteran that was administered in August 2016 and included the issue of increased rating for depressive disorder in its September 2016 rating decision. Accordingly, the effective date of the constructive claim for increased rating for depressive disorder is June 29, 2016, the date it was received by the RO. 

The Veteran is rated at 50 percent for depressive disorder under Diagnostic Code 9434. 38 C.F.R. § 4.130, DC 9434. 

Mental disorders are evaluated under the general rating formula for mental disorders, a specific rating formula presented under 38 C.F.R. § 4.130. In addition, the fourth edition of the American Psychiatric Association’s Diagnostic and Statistical Manual for Mental Disorders (DSM-IV) provides guidance for the nomenclature employed within 38 C.F.R. § 4.130. 

However, effective August 4, 2014, VA amended the portion of its Schedule for Rating Disabilities dealing with mental disorders and its adjudication regulations that define the term “psychosis” to remove outdated references to the DSM-IV and replace them with references to the recently updated Diagnostic and Statistical Manual (Fifth Edition) (the DSM-5). See 79 Fed. Reg. 45,094 (August 4, 2014). VA adopted as final, without change, this interim final rule and clarified that the provisions of this interim final rule do not apply to claims that have been certified for appeal to the Board or are pending before the Board on or before August 4, 2014. See Schedule for Rating Disabilities - Mental Disorders and Definition of Psychosis for Certain VA Purposes, 80 Fed. Reg. 14,308 (March 19, 2015). In the present case, the RO first certified the Veteran’s appeal to the Board in 2018, which is after August 4, 2014. Thus, the version of 38 C.F.R. § 4.125 conforming to the DSM-5 is applicable in the present case. In any event, the Board will still consider any private or VA examiner’s discussion of both the DSM-IV and DSM-5 in adjudicating the current Veteran’s depression claim, in order to provide the Veteran with every benefit of the doubt.

When evaluating a mental disorder, the frequency, severity, and duration of psychiatric symptoms, the length of remissions, and the Veteran’s capacity for adjustment during periods of remission must be considered. 38 C.F.R. § 4.126(a). In addition, the evaluation must be based on all the evidence of record that bears on occupational and social impairment rather than solely on the examiner’s assessment of the level of disability at the moment of the examination. 38 C.F.R. § 4.126(a). When evaluating the level of disability from a mental disorder, the extent of social impairment is considered, but the rating cannot be assigned solely on the basis of social impairment. 38 C.F.R. § 4.126(b).

The General Rating Formula for Mental Disorders provides for a 10 percent rating for psychiatric disorders if there is occupational and social impairment due to mild or transient symptoms which decrease work efficiency and the ability to perform occupational tasks only during periods of significant stress, or symptoms controlled by continuous medication. 38 C.F.R. § 4.130. 

A rating of 30 percent is warranted if there is occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, or mild memory loss (such as forgetting names, directions, recent events). 38 C.F.R. § 4.130. 

A rating of 50 percent is warranted is there is occupational and social impairment with reduced reliability and productivity due to such symptoms as flattened affect, circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once per week, difficulty in understanding complex commands, impairment of short and long term memory; impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships. Id. 

A 70 percent rating is warranted where there is occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); inability to establish and maintain effective relationships. Id. 

A veteran need not exhibit “all, most, or even some” of the symptoms enumerated in the General Rating Formula for Mental Disorders to warrant the assignment of a higher rating. Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002). Rather, the use of the phrase “such symptoms as,” followed by a list of examples, provides guidance as to the severity of symptomatology contemplated for each rating. Id. In particular, use of such terminology permits consideration of items listed as well as other symptoms and contemplates the effect of those symptoms on the claimant’s social and work situation. Mauerhan, 16 Vet. App. at 442.

The Federal Circuit has clarified that the General Rating Formula for Mental Disorders requires not only (1) sufficient symptoms of the kind listed in the percentage requirements, or others of similar severity, frequency, or duration, but also (2) that those symptoms cause the level of occupational and social impairment specified in the regulation. Vazquez-Claudio v. Shinseki, 713 F.3d 112, 118 (Fed. Cir. 2013). The Federal Circuit endorsed an approach whereby the Board would identify the symptoms associated with the service-connected mental health disability, determine whether they are of the kind enumerated in the regulation, and if so, assess whether they result in the level of occupational and social impairment specified by a particular rating. Id. The 50 percent disability rating regulation, in particular, contemplates initial assessment of the symptoms displayed by the veteran, and if they are of the kind enumerated in the regulation, an assessment of whether those symptoms result in occupational and social impairment with reduced reliability and productivity. Id. Reading §§ 4.126 and 4.130 together, it is evident that the “frequency, severity, and duration” of a veteran’s symptoms must play an important role in determining the disability level. Id. at 117. 

The Veteran’s written statement dated June 2016 describes his depression as including symptoms of sleep impairment, sadness, anger and frustration about his separation from the military, being isolative socially, and having previous difficulty with controlling emotions at work like getting in arguments with coworkers and his boss and being anxious about having accidents at work with reference to his colitis.

The Veteran was afforded a VA psychiatric examination in August 2016. The examiner confirmed a diagnosis of major depressive disorder. The examiner chose the box describing the Veteran’s occupational and social impairment with reference to mental diagnoses as creating reduced reliability and productivity, which coincides with the 50 percent disability rating. The Veteran reported he does not have friends or activities outside of the home and he spends time with his brother who lives next door. The Veteran stated he preferred to spend time alone. The examiner reported symptoms of depression including isolation, depressed mood, loss of interest and pleasure, social withdrawal, appetite fluctuations and weight loss, low sense of self-worth, tiredness, fatigue, and lack of motivation, and that his colitis is a major factor in the depression. There were no current suicidal or homicidal ideations, but the examiner stated a past history of passive suicidal ideations. There were no psychiatric hospitalizations. There was some history of domestic violence but not violent behavior outside of those episodes. There was chronic sleep impairment, panic attacks that occur weekly or less often, depressed mood, anxiety, mild memory loss, disturbances of motivation and mood, difficulty in establishing and maintaining effective work and social relationships, and in adapting to stressful circumstances. The Veteran was polite and cooperative but showed anger when discussing his perceived forced retirement from the Air Force. He had a logical and coherent thought process and no audiovisual hallucinations. 

April 2017 VA medical treatment notes state the Veteran reported no suicidal ideations. The Veteran reported continuing to feel depressed and that he had nightmares, trouble sleeping at night and sometimes during the day, with decreased appetite, anhedonia, decreased motivation, and trouble concentrating. The Veteran was on medication for various symptoms related to depressive disorder. The depression screen score was equivalent for mild depression. The Veteran also reported many psychosocial stressors beyond his health to include family members who were ill and deceased. The Veteran was not having hallucinations or delusions, he had logical and linear thought processes, his memory appeared intact although not formally tested, good judgment and insight, no suicidal or homicidal ideation, with appropriate affect and good hygiene and appropriate grooming and appearance. 

At an August 2017 appointment, the Veteran reported sleeping well but still feeling depressed. He reported poor energy and lack of interest in socializing and activities with trouble concentrating and feeling anxious. The depression screen indicated moderate depression. The Veteran reported no suicidal or homicidal ideation. The Veteran was not having hallucinations or delusions, he had logical and linear thought processes. 

The Veteran submitted an independent medical evaluation of his mental health dated September 2017, with follow up evaluations dated October and November 2017. The evaluator asserted that the Veteran should be rated at a 70 percent disability rating. The evaluator endorsed symptoms of “anxious distress” that does not meet the criteria for panic disorder but results in the Veteran’s difficulty with worry about management of his health, in particular the colitis. Other symptoms endorsed by the evaluator included chronic and severely depressed mood, diminished interests, decreased appetite and weight loss, sleep disturbance, psychomotor retardation, fatigue and loss of energy, feelings of worthlessness, diminished concentration, and recurrent thoughts of death including suicidal ideation without intent or plan. With regard to suicidal ideation, the evaluator included that the Veteran had such ideas in the early 90s around the time he separated from active service but since that time, with help from his brother, he has improved, although he stated the thoughts “still creep in sometimes.” The evaluator opined that these symptoms “negatively impact” the Veteran’s memory and ability to follow instructions as well as reactivity and judgment and tolerance in dealing with people such as co-workers and the public. 

The Veteran’s symptoms of depressive disorder more nearly approximate the 50 percent disability rating. The Veteran has disturbances of motivation and mood with difficulty establishing and maintaining effective work and social relationships that pertain to the 50 percent evaluation criteria; with depressed mood, anxiety, some panic attacks (weekly or less often), chronic sleep impairment, and reported mild memory loss, that are consistent with the 30 percent disability rating criteria. 

The Veteran’s symptoms of depressive disorder do not more nearly approximate the 70 percent criteria for mental disorders; during the period on appeal, the evidence of record does not support that the Veteran has occupational and social impairment with deficiencies in most areas due to symptoms such as suicidal ideation, obsessional rituals, speech that is intermittently illogical or obscure or irrelevant, near-continuous panic or depression affecting the ability to function independently, spatial disorientation, periods of violence, neglect of personal hygiene. Although the 2017 independent evaluator listed symptoms to support the opinion of a 70 percent rating, the overall body of medical evidence approximates the criteria for a 50 percent rating. The Veteran reports to appointments with good hygiene and appearance, does not endorse suicidal or homicidal ideations; no audiovisual hallucinations; has logical and coherent speech and though processes; and reports that he has not had periods of violence. The Veteran was competent to deal with his own finances and remembered to take his medications. The Veteran’s records do not reflect that he has an inability to provide self-care. 

Accordingly, the Board finds that a 50 percent rating for service-connected depressive disorder more nearly approximates the Veteran’s symptoms, to include the need for prescription medication. 38 C.F.R. § 4.7. Accordingly, the appeal for a rating in excess of 50 percent for depressive disorder is denied. 

13. Evaluation of ulcerative colitis in excess of 30 percent disabling prior to May 23, 2017; and in excess of 60 percent effective May 23, 2017

The Veteran contends that his colitis is worse than contemplated by the current ratings and that he should have a 100 percent disability rating for that disability. After a thorough review of the evidence, the Board finds that the Veteran’s colitis warrants a 60 percent disability rating during the period on appeal. 

The Veteran has been service-connected for colitis since the date after separation from active service, March 3, 1992. The Veteran is currently rated at 30 percent prior to May 23, 2017, and 60 percent from that date. The Veteran submitted a claim for increased rating for colitis that pertains to the current appeal period on January 8, 2008. 

Diagnostic Code 7323 pertains to ulcerative colitis and provides for a 10 percent evaluation for moderate ulcerative colitis with infrequent exacerbations. A 30 percent evaluation requires moderately severe ulcerative colitis with frequent exacerbations. A 60 percent evaluation is warranted for severe ulcerative colitis with numerous attacks a year and malnutrition and health only fair during remissions. A 100 percent evaluation is warranted for pronounced ulcerative colitis resulting in marked malnutrition, anemia, and general debility or with serious complication as liver abscess. 38 C.F.R. § 4.114, Diagnostic Code 7323. 

The words “slight,” “moderate” and “severe” as used in the various diagnostic codes are not defined in the VA Schedule for Rating Disabilities. Rather than applying a mechanical formula, the Board must evaluate all of the evidence, to the end that its decisions are “equitable and just.” 38 C.F.R. § 4.6. It should also be noted that use of terminology such as “severe” by VA examiners and others, although an element of evidence to be considered by the Board, is not dispositive of an issue. All evidence must be evaluated in arriving at a decision regarding an increased rating. 38 C.F.R. §§ 4.2, 4.6. 

At a March 2008 VA examination, the examiner reported that he has four to five stools daily, not usually with blood. The Veteran takes regular medication to treat the colitis. The Veteran describe regular flare-ups that last up to three weeks that occur about three or four times per year wherein he has six to ten stools per day, sometimes including blood and always painful. The examiner reported that the Veteran does not have a history of anemia. The Veteran was treated intermittently with steroids. There was no evidence of malnutrition. The Veteran reported being hospitalized in 2002 for colitis.

At a September 2009 VA examination, the examiner reported that the Veteran’s colitis was “active on a daily basis.” When he has a flare-up, he is treated with steroids in addition to the medication he takes regularly. The Veteran reported 3 flare-ups since the beginning of year. The Veteran reported he often has urgency with respect to needing the toilet, and in one case was stuck in traffic and was incontinent of stool. There was no anemia. The Veteran had a colonoscopy that showed mild chronic inflammation in the colon. The Veteran was well-nourished. There was abdominal tenderness. 

The Veteran was afforded a VA examination for colitis and hemorrhoids in July 2010. The examiner noted that the Veteran’s colitis affected his work in that he had taken a lot of time off work because of colitis flare ups and related treatment. The Veteran had gained about 25 pounds due to steroid treatment for colitis. The Veteran reported that flares usually occur three to four times per year for about three weeks, but that he was currently in a flare that had been ongoing for six months. The Veteran reported nausea about twice per week. The Veteran reported four to six loose stools daily and that during a flare the stools are bloody. There is no history of fistula. The Veteran was not anemic. The Veteran reported having to take a week off of work in December 2009 and that the associated steroid treatment also causes weight gain and affects his mood and depressive symptoms. The Veteran reported daily cramping and pain in various locations in his body. When he has the flares, they include diarrhea and bleeding and he must stay home from work. The Veteran has been to the emergency room twice this year but not hospitalized.

In November 2011, the Veteran was admitted to the hospital for a 4 day stay due to colitis. The Veteran reported two weeks of uncontrolled bowel movements that were bloody. 

At a February 2013 VA appointment, the Veteran reported five to six bowel movements daily with “good and bad days” and daily pain in the abdomen. 

In a written statement in June 2016, the Veteran described the impact of his colitis on his life as requiring regular trips to the bathroom, always having to know where a bathroom is when he leaves the house and planning his day around that; and carrying clean clothes with him at all times. He wrote that he had to stop working because he was “getting very impatient with people I would get in arguments with coworkers and my boss. I was always worried about having accidents at work and therefore extremely anxious.” 

At a May 2017 VA examination, the examiner noted continuing colitis with multiple medications required daily for control of the condition. The Veteran reported diarrhea, there was abdominal distension, and frequent episodes of decreased appetite. The Veteran had more or less constant abdominal distress with exacerbations or attacks numbering at least seven in the past 12 months. The Veteran did not have malnutrition due to colitis. The Veteran reported he limits activities due to frequent bathroom breaks for colitis symptoms such as loose stools. The Veteran was not anemic. 

When considering the medical and lay evidence of record, the Board finds that an effective date of January 8, 2008 for the increased rating of 60 percent, but no higher, is warranted, while a rating in excess of 60 percent is not warranted at any time. While the manifestations of the Veteran’s ulcerative colitis appear to have varied to some degree during this period, statements from the Veteran and the medical evidence of record support that the symptoms have remained severe from the date of claim in January 2008. While the Board notes that there is no objective medical evidence of malnutrition during this time period, when contemplating the totality of the other manifestations of the Veteran’s ulcerative colitis, the Board finds that the Veteran’s symptoms more nearly approximate the criteria consistent with a 60 percent disability rating for the entire period. Even during remission, the Board notes that the Veteran is now service-connected for diabetes, bilateral hip arthritis, and lumbar spine arthritis as health effects of steroid treatment for colitis. This determination is consistent with VA’s determination to handle cases affected by change in medical findings or diagnosis so as to produce the greatest degree of stability of disability evaluations consistent with the laws and regulations governing disability compensation and pension. See 38 C.F.R. § 3.344(a). 

The Board finds that a higher 100 percent rating for service-connected colitis is not warranted during the period on appeal. The Veteran has not been tested as anemic, does not have marked malnutrition, or general debility, or with a serious complication such as liver abscess. 

Accordingly, the appeal for an increased rating for service-connected colitis is granted prior to May 23, 2017 to 60 percent, but no higher; and is denied from that date for a disability rating in excess of 60 percent. 

 

DAVID L. WIGHT

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD E. Miller